OPINION OF THE COURT
Edgar G. Walker, J.
The defendant Wazir Ali is charged with one count of driving a motor vehicle while impaired by the consumption of alcohol and two counts of operating a motor vehicle while *743 intoxicated, pursuant to subdivisions (1), (2) and (3) respectively of section 1192 of the Vehicle and Traffic Law.
The information alleges that the defendant had a blood alcohol level of .11 of 1% by weight of alcohol, as shown by a test administered pursuant to Vehicle and Traffic Law § 1194. The defendant has moved to suppress the results of the breathalyzer test, pursuant to CPL 710.20, on the ground that the test was not administered pursuant to Vehicle and Traffic Law § 1194 in that it was administered more than two hours after his arrest.
It is undisputed that the breathalyzer test was administered more than two hours after the defendant was arrested. Affidavits of the arresting officer and breathalyzer operator attached to the court papers show the time of arrest as being 12:15 a.m. and the time of the test as being 2:30 a.m. This case squarely presents the issue of whether, in the absence of a court order, a breathalyzer test must be administered within two hours of the arrest of a conscious driver.
In 1941, for the first time in New York State, the Legislature provided that the results of tests measuring a driver’s blood alcohol content (BAG) were admissible at trial (L 1941, ch 726, eff July 1, 1941, amending Vehicle and Traffic Law § 70 [5]). That statute required the test to be administered within two hours of arrest to be admissible.[1] However, the law did not provide for the test to be administered except with the express consent of the accused. (See, 1941 Opns Atty Gen 143.)
In 1953, for the first time in New York State, the Legislature passed the so-called "implied consent law” providing that anyone operating a motor vehicle in the State "shall be deemed to have given his consent to a chemical test” to determine BAG (L 1953, ch 854, eff July 1, 1953). This statute, while adding a new section (Vehicle and Traffic Law § 71-a) to the law, left Vehicle and Traffic Law § 70 (5), containing the two-hour requirement, unchanged.
Since 1953, throughout innumerable amendments, the Vehicle and Traffic Law has contained both an implied consent provision and a two-hour rule. The 1959 recodification of the *744 Vehicle and Traffic Law (L 1959, ch 775, eff Oct. 1, 1960) retained the two-hour requirement in section 1192. The implied consent provision became section 1194 of the new law.
In 1970, for the first time in New York State, the Legislature enacted the forerunner of the present Vehicle and Traffic Law § 1192 (2), providing for criminal liability based solely upon a driver’s BAG as shown by a chemical test (L 1970, ch 275, eff Jan. 1, 1971). Both the definition of the new offense contained in Vehicle and Traffic Law § 1192 (2) and the provisions of Vehicle and Traffic Law § 1195 (1), governing the admissibility of chemical tests at trial, required the tests to be administered pursuant to the provisions of Vehicle and Traffic Law § 1194.[2]
The two-hour requirement was transferred to Vehicle and Traffic Law § 1194 which also retained the implied consent provision. There is no indication in any of the legislative history that, by transferring the two-hour requirement from Vehicle and Traffic Law § 1192 to Vehicle and Traffic Law § 1194, there was any intent to limit the application of the two-hour requirement to drivers who were unconscious or otherwise incapable of giving their consent. Indeed, the Governor, who proposed the amendments as part of his legislative program, stated, both in his memorandum in support of the bill when introduced and in his memorandum upon approving the bill after it was passed, that his bill made only "conforming” changes to section 1194 of the Vehicle and Traffic Law (1970 McKinney’s Session Laws of NY, at 3085, 3086).
Since 1941 the admissibility of chemical tests measuring BAG has been strictly governed by statute. As previously noted both Vehicle and Traffic Law § 1192 (2) and Vehicle and Traffic Law § 1195 (1) require that the test be administered pursuant to Vehicle and Traffic Law § 1194.
*745 Vehicle and Traffic Law § 1194 (2) governs "chemical tests,” except for "compulsory chemical tests,” which are governed by Vehicle and Traffic Law § 1194 (3). Section 1194 (2) (a) and section 1194 (3) (b) specify precisely when such tests are authorized.[3] Unless so authorized, the tests are inadmissible under Vehicle and Traffic Law § 1195 (1) and cannot provide the basis for a conviction under Vehicle and Traffic Law § 1192 (2) according to the specific language of those sections.
This court notes that there is no two-hour requirement contained in Vehicle and Traffic Law § 1194 (3). It is clear that the Legislature determined that such a restriction was unnecessary, relying upon the sound discretion of a neutral Magistrate to ensure that the test results are reasonably related to *746 the driver’s BAG at the time of the alleged offense. (People v McGrath, 135 AD2d 60 [2d Dept 1986].) The Legislature showed no such deference to the police officer in the field in Vehicle and Traffic Law § 1194 (2).
This court is well aware of the opinion of the Appellate Division, Second Department, in People v Mills (124 AD2d 600 [1986]), that the two-hour rule does not apply in situations where the test has been administered with the defendant’s "express consent.” The Appellate Division, First Department, has not addressed this issue. Were Mills the only authority, this court would be constrained to follow that holding. However, there is a split among the Appellate Divisions, requiring this court to decide for itself which rule to follow.
The Appellate Division, Fourth Department, has long held that, at least in the absence of a court order, "[u]nless the test is taken within the two-hour time limit * * * the results are not competent evidence and may not be received in evidence against the operator.” (People v Brol, 81 AD2d 739, 740 [1981]; see also, Matter of White v Melton, 60 AD2d 1000 [1978]; Matter of Jentzen v Tofany, 33 AD2d 532 [1969].)
Different panels in the Appellate Division, Third Department, have reached opposite results. In People v Keane (76 AD2d 963 [1980]), the appellate panel ruled that "[i]n the absence of this vital proof [that the test was administered within two hours of defendant’s arrest], the chemical test results were not admissible in evidence.” However, a different panel, following Mills (supra), ruled that the People had no duty to prove that the test was administered within two hours of defendant’s arrest. (People v Abel, 166 AD2d 841 [1990].) That panel made no attempt to distinguish Keane, not even mentioning that prior decision from the same department, even though one Justice was a member of both unanimous panels!
While the court in Mills (supra) did not define exactly what it meant by "express consent” it seems clear that the court used that term in contrast to "implied consent,” used to refer to situations in which the driver was either unconscious or otherwise unable to give his "express consent.” That court thus read out of the statute the most common scenario by which the test is administered, i.e., a police officer requests a driver to take the test, informs the driver of the consequences of a refusal and then administers the test with the "express consent” of the driver. *747 While this court is sympathetic to the approach taken by the court in People v Sesman (137 Misc 2d 676 [1987]), which found that the aforesaid scenario constitutes "acquiescence” rather than "consent,” thus distinguishing Mills (supra), those lower courts following Mills (see, e.g., People v Dillin, 150 Misc 2d 311 [1991]; People v Johnson, NYLJ, Apr. 15, 1991, at 26, col 1) have not read Mills so narrowly. This court agrees with the more expansive reading of the holding in Mills but declines to follow it.
This court cannot conclude that the Legislature in 1970, merely by moving the language embodying the two-hour requirement from Vehicle and Traffic Law § 1192 to Vehicle and Traffic Law § 1194, intended to accomplish a major change in the existing law in the absence of clear language to that effect either in the statute itself or in the legislative history. The unambiguous language of Vehicle and Traffic Law § 1192 (2) and Vehicle and Traffic Law § 1195 (1) belies such an intent.
This court is aware of no authority which allows a defendant to waive the pleading and proof of an essential element of a crime under any circumstances. Certainly where a defendant is warned that if he refuses to take the test his license will be revoked and his refusal admitted into evidence at his trial, no such waiver can be inferred from his consent to take the test. In fact the information itself, tracking the statutory language, alleges that the test was administered "pursuant to provisions of Section 1194 of the Vehicle and Traffic Law.” That allegation is, on the face of the information, not true. The People seem to recognize the necessity of pleading compliance with the provisions of Vehicle and Traffic Law § 1194 while at the same time taking the position that it is inapplicable to the consciously consenting defendant.
In the absence of compelling appellate authority to the contrary, this court cannot conclude that the detailed safeguards embodied in Vehicle and Traffic Law § 1194 (2) (a) are intended to apply solely to unconscious drivers.
People v Ward (307 NY 73 [1954]) is often cited as such compelling authority. (See, e.g., People v Abel, supra; People v Dillin, supra; People v Johnson, supra.) The court in Ward determined that a driver need not be apprised of his rights under Vehicle and Traffic Law § 71-a, then in effect, to refuse to take the test and to have his own physician administer an additional test.
*748 It must be remembered, however, that Vehicle and Traffic Law § 71-a dealt only with implied consent and did not embody the two-hour requirement. At the time Ward (supra) was decided, Vehicle and Traffic Law § 70 (5) unambiguously required that the test be administered within two hours of arrest. The oft-quoted language in Ward that Vehicle and Traffic Law § 71-a — the implied consent law — had no application where the defendant voluntarily submitted to the test is thus totally unremarkable and totally irrelevant to a consideration of the applicability of the two-hour requirement.
More to the point is the language of the Court of Appeals in People v Mertz (68 NY2d 136 [1986]), interpreting the current statute. The opinion of the court states that "proof of a breathalyzer reading of .10 or more within two hours after arrest establishes prima facie a violation of Vehicle and Traffic Law § 1192 (2)”. (68 NY2d, at 146.) Since the applicability of the two-hour requirement was not an issue in Mertz, the court did not explicitly rule that the test must be administered within two hours, although it is clear that both the parties and the court implicitly assumed the two-hour rule applied.
What is implicit in the opinion of the court is explicit in the concurring opinion of Chief Judge Wachtler. After quoting the language of Vehicle and Traffic Law § 1192 (2) with its reference to the provisions of Vehicle and Traffic Law § 1194 he continued:
"Section 1194 (1), in turn, provides for the administration of the breathalyzer test up to two hours after an arrest upon probable cause.
"Thus, the gravamen of a violation of Vehicle and Traffic Law § 1192 (2) is not that a defendant operates a vehicle with .10% or higher blood alcohol content, but that he is found to have done so under the procedures prescribed by section 1194.” (68 NY2d, at 149 [emphasis supplied].)
In the absence of any explicit guidance from the Appellate Division, First Department, and with a clear split among the other departments and even within the Third Department, this court finds support for its decision not only in the previously cited cases from the Fourth Department but in the language of the Court of Appeals in both the opinion of the court and the concurrence of the Chief Judge.
Since Vehicle and Traffic Law § 1192 (2) and Vehicle and Traffic Law § 1195 (1) both incorporate the two-hour rule of *749 Vehicle and Traffic Law § 1194 (2) (a) the count charging a violation of Vehicle and Traffic Law § 1192 (2) is dismissed and the results of the breathalyzer test are inadmissible at the trial of the remaining counts.

. Section 70 (5) as amended reads, in relevant part, as follows: "Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle or motorcycle while in an intoxicated condition, the court may admit evidence of the amount of alcohol in the defendant’s blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of his breath, blood, urine, or saliva.”

. Section 1192 (2) currently reads as follows: ”2. Driving while intoxicated; per se. No person shall operate a motor vehicle while such person has .10 of one per centum or more by weight of alcohol in the person’s blood as shown by chemical analysis of such person’s blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this article.”
Section 1195 (1) currently reads as follows: "1. Admissibility. Upon the trial of any action or proceeding arising out of actions alleged to have been committed by any person arrested for a violation of any subdivision of section eleven hundred ninety-two of this article, the court shall admit evidence of the amount of alcohol or drugs in the defendant’s blood as shown by a test administered pursuant to the provisions of section eleven hundred ninety-four of this article.”

. Section 1194 (2) (a) reads as follows:
"2. Chemical tests, (a) When authorized. Any person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test of one or more of the following: breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of the blood provided that such test is administered by or at the direction of a police officer with respect to a chemical test of breath, urine or saliva or, with respect to a chemical test of blood, at the direction of a police officer:
"(1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section eleven hundred ninety-two of this article and within two hours after such person has been placed under arrest for any such violation, or
"(2) within two hours after a breath test, as provided in paragraph (b) of subdivision one of this section, indicates that alcohol has been consumed by such person and in accordance with the rules and regulations established by the police force of which the officer is a member.”
Section 1194 (3) (b) reads as follows:
"3. Compulsory chemical tests * * * (b) When authorized. Upon refusal by any person to submit to a chemical test or any portion thereof as described above, the test shall not be given unless a police officer or a district attorney, as defined in subdivision thirty-two of section 1.20 of the criminal procedure law, requests and obtains a court order to compel a person to submit to a chemical test to determine the alcoholic or drug content of the person’s blood upon a finding of reasonable cause to believe that:
"(1) such person was the operator of a motor vehicle and in the course of such operation a person other than the operator was killed or suffered serious physical injury as defined in section 10.00 of the penal law; and
"(2) a. either such person operated the vehicle in violation of any subdivision of section eleven hundred ninety-two of this article, or
"b. a breath test administered by a police officer in accordance with paragraph (b) of subdivision one of this section indicates that alcohol has been consumed by such person; and
"(3) such person has been placed under lawful arrest; and
"(4) such person has refused to submit to a chemical test or any portion thereof, requested in accordance with the provisions of paragraph (a) of subdivision two of this section or is unable to give consent to such a test.”