*129 OPINION OF THE COURT
William Garnett, J.
If a defendant is asked to take a breathalyzer test more than two hours after his or her arrest and the defendant refuses, may the prosecution use the fact of that refusal as consciousness of guilt evidence pursuant to Vehicle and Traffic Law § 1194 (2) (f)?
At 10:20 p.m., on December 11, 1993, the defendant was arrested for driving while intoxicated. (Vehicle and Traffic Law § 1192 [3].) On December 12, 1993, at 12:50 a.m., 2Vi hours after his arrest, the defendant refused to take a breathalyzer test to determine the alcoholic content of his blood.
The People concede that this chemical test was proffered more than two hours after the defendant’s arrest.
Citing statutory and case law authority, the defense has moved to preclude the prosecution’s use of the defendant’s refusal as evidence of guilt.
Relying on People v Brol (81 AD2d 739 [4th Dept 1981]), the defense contends that the two-hour limitation contained in Vehicle and Traffic Law § 1194 (2) (a) (1) precludes the evidentiary use of a defendant’s refusal when the test is offered more than two hours after a defendant’s arrest. In essence, the defense would interpret the two-hour limitation in this section to deny the police’s authority to proffer a chemical test after that two-hour period has elapsed.
The People aver that section 1194 (2) (a) (1) has a very narrow applicability. It is argued that, in People v Mills (124 AD2d 600 [2d Dept 1986]), the Appellate Division severely circumscribed the ambit of this statute to apply only in cases in which the defendant is incapable of giving her or his consent. Thus, if this time limitation is only applicable in cases of "implied consent,” then an officer’s authority to offer a chemical test to a defendant who is capable of giving express consent is not barred by the time limitation in this statute.
STATUTORY STRUCTURE
Section 1194 (2) (a) provides that: "[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test”. Thus, a motor vehicle *130 operator impliedly consents to the administration of a chemical test to determine the alcoholic content of his or her blood. Thereafter, subparagraph (1) of this statute prescribes the conditions precedent to the officer’s reliance on the implied consent authority contained in the statute. One of those conditions is that the test must be administered within two hours of the defendant’s arrest.
Section 1194 (2) (b) provides that when an individual is proffered a test and refuses, the test shall not be given and a written report of that refusal must be made. Subdivision (2) (c) of this statute enumerates the issues which are the subject of an administrative hearing to determine whether a driver’s license should be revoked after a refusal to take a chemical test. Revocation does not require an affirmative finding that the chemical test was offered within two hours of the driver’s arrest.
Subdivision (3) of Vehicle and Traffic Law § 1194 establishes a procedure for obtaining a court-ordered chemical test. Significantly, this section of the statute does not preclude an application for a court order or the administration of a chemical test after the passage of any period of time.
Section 1194 (2) (f) sanctions the use of a defendant’s refusal to take a chemical test as evidence of guilt when a person is being tried for any violation of Vehicle and Traffic Law § 1192. This evidence may be received if the defendant was warned of the consequences of her or his refusal and that, after being admonished, the defendant persisted in his or her refusal. The statute does not incorporate the time limitation contained in Vehicle and Traffic Law § 1194 (2) (a) (1) either explicitly or by reference.
The two-hour rule had its genesis in Vehicle and Traffic Law § 70 (5) which provided that chemical evidence was admissible only if the test was performed within two hours of arrest (L 1941, ch 726, eff July 1, 1941). Clearly, this was a rule of an evidentiary nature unrelated to any "implied consent” provision. In 1970, a telling development occurred. The Legislature took the two-hour provision out of the successor statute to Vehicle and Traffic Law § 70 (5), i.e., Vehicle and Traffic Law former § 1195 (1), and moved it into the implied consent provision contained in section 1194. At the same time, the Legislature enacted a predecessor statute to the present Vehicle and Traffic Law § 1192 (2). Thus, the two-hour rule was moved from the evidentiary statute and was *131 incorporated into the implied consent provision. This realignment of statutory provisions was of substantial moment and impact. This change removed the two-hour stricture from the overarching statute which provided for admissibility of chemical test evidence and wedded it with the statute which conferred authority on police officers to obtain relevant evidence of intoxication in cases where the police would have to rely upon implied consent because of the driver’s inability to acquiesce in or refuse a chemical test.
An examination of the structure of Vehicle and Traffic Law § 1194 demonstrates that this statute discretely deals with the collection of evidence from drivers who have been charged with violating any of the provisions of Vehicle and Traffic Law § 1192. In cases in which the driver is incapable of consenting, the police have authority bottomed on the provisions of Vehicle and Traffic Law § 1194 (2) (a). If the driver is capable of consent, then the procedures delineated in subdivision (2) (b) are applicable. If the driver is incapable of giving consent and the two-hour period contained in section 1194 (2) (a) has expired or the sentient driver refuses to take a chemical test, the police may then invoke, if applicable, the provisions of subdivision (3) which provides for a court order. Thus, section 1194 may be read to have segregated the three means by which the police may obtain chemical test evidence, i.e., implied consent, express consent and court order.
CASE LAW
In 1986, the Appellate Division, Second Department, interpreted Vehicle and Traffic Law § 1194 (1), now Vehicle and Traffic Law § 1194 (2) (a), to apply only when the driver is "either unconscious or otherwise incapable of giving consent”. (People v Mills, 124 AD2d 600, 601 [2d Dept 1986], lv denied 69 NY2d 953 [1987].) Thus, where a driver explicitly consents to the administration of a chemical test, the time constraint contained in the "implied consent” section are inapposite. Therefore, if express consent is obtained, then the results are admissible despite the fact that more than two hours have passed since the defendant’s arrest. The Appellate Division in Mills cited People v Kates (53 NY2d 591 [1981]) as authority for its narrowing interpretation of the two-hour limitation. In examining the structure of Vehicle and Traffic Law § 1194 (1), now Vehicle and Traffic Law § 1194 (2) (a) and (b), the Court of Appeals, in Kates, acknowledged that the wording of the *132 statute "was carefully chosen” to distinguish between instances of implied consent and situations in which a driver was capable of giving his consent. (Supra, at 595.) The Legislature properly distinguished between "the conscious, driver and the unconscious or incapacitated driver.” (Supra, at 596.) Structurally, the present statute still makes that rational distinction in section 1194 (2) (a) and (b).
The other Appellate Divisions which have addressed the two-hour issue are split. In the most recent pronouncement, the Third Department has adopted the Mills interpretation of the implied consent statute. (People v Abel, 166 AD2d 841 [3d Dept 1990].) The significance of this endorsement of Mills (supra) was somewhát lessened by the failure of the court to overrule, or even cite, an earlier Third Department case which would appear to countenance adherence to the two-hour limitation. (People v Keane, 76 AD2d 963 [3d Dept 1980].)
The applicability of the two-hour rule was further limited when the Appellate Division, Second Department, extended the Mills rationale by ruling that the two-hour time limitation does not apply to court-ordered chemical tests. (People v McGrath, 135 AD2d 60 [2d Dept 1988], affd on opn below 73 NY2d 826 [1988].) Thus, with the apparent approbation of the Court of Appeals, the two-hour limitation has been confined only to cases of implied consent. In essence, these rulings have transformed the two-hour rule from one of evidentiary significance to one of procedural consequence. The rule no longer has evidentiary significance because chemical test results obtained more than two hours after a defendant’s arrest by express consent or court order are now admissible. (See, People v Johnson, NYLJ, Apr. 15, 1991, at 26, col 1 [Sup Ct, NY County]; People v Dillin, 150 Misc 2d 311 [Crim Ct, NY County 1991].) However, the rule has been interpreted to delimit the period in which the police may invoke their "implied consent” authority to perform a chemical test on a driver who is incapable of giving consent.
In People v Brol (81 AD2d 739 [4th Dept 1981]), the Appellate Division, Fourth Department, endorsed an expansive application of the two-hour rule and found inadmissible any refusal which would be obtained more than two hours after the defendant’s arrest. The Court reasoned: "But if the test’s results are incompetent if the test is not administered within the two-hour limit, evidence of the refusal is similarly incompetent * * * against [a] defendant unless obtained within two hours of the arrest.” (Supra, at 740; accord, People v Ali, 151 *133 Misc 2d 742 [Crim Ct, NY County 1991].) In light of the Second Department’s holding in Mills (supra) admitting evidence obtained beyond the two-hour pale, is the converse of the Brol rationale true, viz., is a refusal also admissible as consciousness of guilt evidence?
The only court to address the admissibility of a refusal subsequent to the Mills decision (supra) limited Mills to chemical test results obtained by express consent and followed Brol (supra) on the issue of the admissibility of the refusal. (People v Walsh, 139 Misc 2d 161 [Nassau Dist Ct 1988].) Yet, if an officer, pursuant to Vehicle and Traffic Law § 1194 (2) (b), has the authority to request that a driver take a chemical test more than two hours after the arrest, and the test results are deemed probative, why is a defendant’s refusal to take the authorized test not probative of a consciousness of guilt? The position taken by the court in Walsh seems incongruous with the rationale of Brol that if the officer has no authority to request the test, then a refusal is inadmissible. By the reasoning in Brol, the admissibility of the refusal evidence is inextricably linked to the competency of the chemical test evidence.
Thus, the ruling in Walsh (supra) is at odds with the binding statutory interpretation in Mills (supra) and inconsistent with the underlying reasoning of Brol (supra).
It has been contended that the Court of Appeals ruling in People v Mertz (68 NY2d 136 [1986]) demonstrated that the two-hour limitation is applicable in all instances. However, the application of the two-hour rule was not before the Court. The appeal concerned the trial court’s failure to permit the defense to show that the defendant’s blood alcohol level was less than .10 of 1% at the time of the operation of the vehicle, the admissibility of breathalyzer logs and the court’s charge. In Mertz, when the Court opined that the prosecution had established prima facie a violation of Vehicle and Traffic Law § 1192 (2) when evidence of a breathalyzer test, administered within two hours of the defendant’s arrest, showed a reading of .10 of 1% or more, the Court was not applying a statutory presumption contained in the language of section 1192 (2), but was, at most, fashioning a common-law rule to aid the prosecution in establishing a prima facie case. The prima facie rule assists the prosecution in demonstrating beyond a reasonable doubt that the defendant’s blood alcohol level was above the legal limit when the defendant actually operated his vehicle. Thus, Mertz does not establish that the statutory two-hour rule is applicable whenever a chemical test is administered.
*134 CONCLUSION
This court is bound by the Appellate Division, Second Department’s statutory interpretation of Vehicle and Traffic Law § 1194 (1), now Vehicle and Traffic Law § 1194 (2) (a), in the Mills decision (supra). The Mills interpretation of the "implied consent” provision is consistent with the structure and language of Vehicle and Traffic Law § 1194. A review of the statutory framework demonstrates that section 1194 envisions three methods for gathering chemical evidence in cases which involve alleged violations of Vehicle and Traffic Law § 1192. Chemical data may be obtained by implied consent, express consent or court order. Only the provision which deems that a driver has given consent contains the two-hour limit.
In 1970, the Legislature moved the two-hour limitation from the evidentiary statute into the "implied consent” provision. This act was a significant recognition that the rule was not evidentiary but procedural. An examination of the components of the statute show that, unlike the common-law rule of evidence stated in Mertz (supra), this statutory two-hour provision is a rule granting authority to act and is not a rule of evidence. If the Legislature had intended to foreclose the use of any chemical evidence gleaned after two hours, then it could have explicitly done so in Vehicle and Traffic Law § 1195 (1). Moreover, except for Vehicle and Traffic Law § 1194 (2) (a), no other section of this comprehensive statute expressly mentions a two-hour period. Courts have interpreted this statute’s provisions to permit chemical evidence obtained more than two hours after an individual’s arrest when the data was obtained by express consent or court order.
Further, the sections which deal with the consequences of a person’s refusal to take a test, i.e., Vehicle and Traffic Law § 1194 (2) (c) and (f), do not require proof that the chemical test was offered within two hours of the defendant’s arrest to impose license and evidentiary sanctions.
The apparent unquestioned adherence to the two-hour provision as an evidentiary rule is a vestige of the first statute which permitted chemical test evidence. The rule, as a rule of evidence, is attractive in that it is susceptible of ready application. Its certainty relieves a trial court of the task of determining whether the probative value of the test results are *135 outweighed by the prejudicial effect of the results because of the passage of time. A two-hour rule would certainly serve an evidentiary purpose if the event which triggered its application was the last moment of operation of a motor vehicle by a driver for it is a driver’s blood alcohol content and condition at the time of operation which is the gravamen of the alleged offense. The two-hour rule was always a flawed rule of evidence for the defendant’s arrest could be delayed or postponed for many reasons. Thus, a rule which, in one case, precludes chemical test evidence obtained two hours and one minute after a driver’s operation of a vehicle where a defendant’s arrest was nearly immediate but, in a second case, permits the chemical test evidence many hours after a driver last operated a vehicle because the arrest was delayed is a rule of evidence that is not grounded in an objective evaluation of the probative value of the evidence. If the two-hour rule still operates in some courts, it has been severely enervated by case law.
In light of these recent cases, particularly in light of Mills (supra), and the structure of the statute, the two-hour rule should be denominated a procedural rule which confers authority on the police, to obtain chemical evidence in "implied consent” cases. Once the two-hour period has elapsed and the driver remains incapable of consent, the police must obtain a court order to administer a chemical test.
If chemical evidence obtained by express consent after two hours is presumably of probative value, then a driver’s refusal to take a chemical test more than two hours after arrest is probative of a driver’s consciousness of guilt. This entire statute is designed to facilitate, and not impede, the gathering of probative chemical evidence. If an officer has the authority to request that a conscious and capable driver take a chemical test more that two hours after the driver’s arrest, then the driver should not be permitted to thwart the statutory scheme by refusing a chemical test with impunity. As the Court in Brol (supra) plainly acknowledged, the evidentiary significance of a refusal is linked to the propriety of the request. A proper request may not be refused without statutory consequences. On its face, Vehicle and Traffic Law § 1194 (2) (f) does not require as a prerequisite for admission of the refusal that the request be made within two hours.
Therefore, the fact that the defendant refused to take a chemical test more that two hours after his arrest does not *136 per se render evidence of the refusal inadmissible as consciousness of guilt evidence.*

 While the two-hour rule does not bar evidence of a defendant’s refusal, the prosecution would still have to satisfy the statutory requirements for admission contained in Vehicle and Traffic Law § 1194 (2) (f).
Moreover, a trial court would still possess the authority to preclude the evidence of a refusal if its probative value were outweighed by its prejudicial effect. For example, if the test were offered at a time so distant in time from the operation of the vehicle that any results would be bereft of probative worth, then a refusal at such a time would also be too prejudicial.